THE STATE OF OHIO, APPELLEE, *v.*
SHIELDS, APPELLANT.

(No. 46012—Decided February 6, 1984.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Mr. Thomas M. Keane* and *Mr. Thomas M. Shaughnessy,* for appellant.

MARKUS, J. The jury found defendant guilty of aggravated murder (R.C. 2903.01) with an aggravating specification (R.C. 2929.04[A][7]), and six counts of aggravated robbery (R.C. 2911.01[A] [1]). After a subsequent sentencing hearing, the jury determined that the aggravating circumstance for the aggravated murder (R.C. 2929.04[A][7]) did not outweigh mitigating factors (R.C. 2929.04[B]). They recommended that defendant be sentenced for the aggravated murder "to life imprisonment with parole eligibility after thirty full years," pursuant to R.C. 2929.03(D)(2). The trial court imposed that sentence, together with consecutive sentences for the six aggravated robbery convictions.

Defendant appeals, arguing: (1) the court unfairly restricted cross-examination of state witnesses; (2) the evidence does not support his convictions for aggravated murder and one of the six aggravated robbery charges; (3) the applicable sentencing statute is unconstitutional; (4) the court wrongly ex-

cused prospective jurors who opposed capital punishment; and (5) the court improperly replaced a juror with an alternate. These contentions lack merit, so we affirm.

The state called five witnesses who were present in the apartment where the alleged offenses occurred, three investigating police officers, and a deputy coroner. Beverly Brooks leased that apartment and operated an unlicensed "after hours" liquor sales establishment there. Defendant entered the apartment with a companion; Mrs. Brooks was in an adjoining bedroom. She recognized defendant from prior occasions when he patronized her business and visited his mother in the same building. Defendant did not observe her presence.

Mrs. Brooks heard defendant threaten and rob two patrons, and then saw defendant force them into another room at gunpoint. Three more patrons arrived. Defendant ordered all five patrons to lie on the floor and then directed one to empty all their pockets.

As Mrs. Brooks tried to escape behind defendant, she saw him point a handgun at one robbery victim, who was lying face down. Defendant fired a single shot into the back of the victim's head. She was only four or five feet away from defendant when she observed these events. One of the patrons jumped up and wrestled the gun (a .357 magnum) from defendant. Defendant and his companion fled.

The surviving patrons corroborated Mrs. Brooks' testimony. Two patrons saw defendant fire the fatal shot. Another two knew defendant before that night. Each of them testified that defendant had robbed them.

After defendant and his companion left, Mrs. Brooks noticed that several bottles of liquor were missing. One of the patrons testified that he heard defendant's companion hit bottles together as if the companion were placing them in a bag.

Several police photographs depicted the homicide victim in the facedown position described by the witnesses. The deputy coroner testified that a single gunshot wound to the victim's head caused his death. The defense called no witnesses.

## I

Defendant's first assigned error disputes rulings which allegedly restricted cross-examination of state witnesses. His brief cites twelve instances, during eight days of testimony by state witnesses, when the court sustained the prosecutor's objection to defense questions. However, the brief fails to explain why he contends the rulings were erroneous or why they were prejudicial. This court may disregard claimed errors which are not separately argued. App. R. 12(A). To the extent that we can discern the claimed irregularities, we will address them.

Five of the disputed questions concern prior acts by witnesses, which defense counsel apparently contends affect their credibility. He sought to show that two witnesses participated in illegal gambling, two received illegal welfare or unemployment compensation, and one participated in illegal liquor sales. Counsel cannot challenge a witness' credibility with evidence of bad moral character. State v. Phillips (Jan. 27, 1983), Cuyahoga App. No. 45290, unreported. They may seek to impeach a witness on cross-examination by questions about prior misconduct which relate directly to truthfulness. Evid. R. 608(B). The trial court has discretion to determine whether the alleged prior conduct is "clearly probative of truthfulness or untruthfulness."

One challenged question asked details about a witness' prior felony conviction. The witness acknowledged that conviction, and the court limited defense counsel's further inquiry about it. The court has discretion to prohibit questions which ask more than the name and date of the offense, when the conviction

is admissible solely to impeach general credibility. See *United States* v. *Tumblin* (C.A. 5, 1977), 551 F. 2d 1001 (applying Fed. R. Evid. 609 to give court such discretion).

The court apparently sustained objections to three disputed questions on relevance grounds. Defense counsel asked about rentals paid for a jukebox in that apartment and firearms allegedly located there. The court has discretion to admit or exclude evidence with marginal probative value on collateral matters. Evid. R. 403(B); *State* v. *Lane* (1976), 49 Ohio St. 2d 77 [3 O.O.3d 45].

Three additional questions (and one discussed earlier) used objectionable form to seek answers. Some were argumentative questions which assumed facts outside the evidence or pursued a witness who repeatedly disclaimed knowledge. One asked for information without showing that the witness had any basis for personal knowledge. The court retains discretionary authority to control the form of questions. Evid. R. 611(A).

Defense counsel has failed to show any abuse of the trial court's discretion by the challenged rulings. Defendant's constitutional right to cross-examine adverse witnesses does not authorize his counsel to disregard reasonable evidentiary rules. His first assigned error lacks merit.

## II

Defendant's second claimed error denies the sufficiency of evidence for the aggravated murder conviction and one of the six aggravated robbery convictions. He contests the proof that he acted purposely in the homicide, and that he participated in the theft of Mrs. Brooks' liquor. We should affirm if the jury could reasonably conclude from substantial evidence that the state proved all elements of the offense beyond a reasonable doubt. *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340].

Defendant's conviction for aggravated murder required proof that defendant "purposely cause[d] the death of another" while committing or fleeing from an aggravated robbery. R.C. 2903.01(B). He argues that the killing may have been accidental because the fatal weapon was mechanically unreliable. "A person acts purposely when it is his specific intention to cause a certain result * * *." R.C. 2901.22(A).

Two eyewitnesses testified that defendant aimed and fired the weapon at the back of the victim's head in the course of the armed robbery. Another eyewitness testified that defendant aimed and fired the weapon as he was retreating from the premises. The victim was lying in a facedown position. A single bullet pierced the victim's brain. The jury may infer the intent to kill from those circumstances. Cf. *State* v. *Johnson* (1978), 56 Ohio St. 2d 35 [10 O.O.3d 78].

Defendant's aggravated robbery convictions required proof that he committed "a theft offense" or fled from such an offense while he possessed a deadly weapon. R.C. 2911.01(A)(1). He committed "theft" if he purposely deprived the owner of property without the owner's consent. R.C. 2913.02(A)(1). He was punishable for the theft as a principal offender, if he aided or abetted another in committing that offense. R.C. 2923.03.

For the disputed aggravated robbery, Mrs. Brooks testified that her liquor was missing after defendant and his companion fled. A patron testified that he heard defendant's companion place bottles in a bag. Several witnesses testified that defendant forced the patrons to lie facedown while he robbed them. Collectively, these facts permitted the jury to conclude that defendant and his companion stole Mrs. Brooks' liquor. Defendant offered no other explanation for these inculpatory circumstances.

Defendant's second assigned error lacks merit.

## III

Defendant's third claimed error charges that the aggravated murder sentencing procedure (R.C. 2929.03) is unconstitutional on its face and as the court applied it here. He contends that the bifurcated trial (a) impairs defense counsel's effectiveness by forcing a choice between asserting a potentially unsuccessful defense and retaining credibility for the sentencing hearing, and (b) prejudices the jury in deciding guilt or innocence by voir dire questions about capital punishment before they decide culpability.

He also contends that the penalty statutes deny equal protection. He claims that they authorize unreasonably disparate punishments for murders committed with prior calculation and design and murders committed in the course of designated felonies. His brief argues that murder in the course of a listed felony constitutes both aggravated murder (R.C. 2903.01[B]), and an aggravating circumstance to enhance the penalty (R.C. 2929.04[A][7]).

### A. Effective Assistance of Counsel

Defendant is constitutionally guaranteed effective assistance by counsel. The Sixth and Fourteenth Amendments to the United States Constitution; Section 10, Article I, Ohio Constitution.

The same jury determines culpability for aggravated murder and recommends the sentence, when it finds an aggravating circumstance charged by a specification in the indictment. R.C. 2929.03. If the jury recommends life imprisonment with parole eligibility after twenty or thirty years, the court must impose that sentence. R.C. 2929.03(D) (2). If the jury finds that aggravating circumstances outweigh mitigating factors and therefore recommends death, the court must make the same decision before imposing that sentence. R.C. 2929.03(D)(3).

Defendant contends that his counsel risks loss of credibility by asserting a tenuous defense and thereafter contesting the relative weight of aggravating and mitigating circumstances. However, counsel faces the same choice in every criminal case where multiple defenses can be asserted. The defense in the punishment phase is part of the total defense for the case.

If counsel relies on one or more unsuccessful defenses, he or she risks impairment of credibility for all other defenses. Indeed, effective assistance by counsel necessarily includes strategic choices among possible defense positions. See A.B.A. Standards Relating To The Defense Function, Section 5.2(b); Code of Professional Responsibility, DR 7-101(B)(1), EC 7-4. Counsel could avoid loss of credibility from asserting a debatable position only if separate tribunals heard and decided every issue and subissue.

Bifurcated trial procedures, in which the same jury separately hears and decides guilt and punishment, are constitutionally permissible in capital cases. *Gregg* v. *Georgia* (1976), 428 U.S. 153; *Jurek* v. *Texas* (1976), 428 U.S. 262. In those cases, the United States Supreme Court apparently allowed jurors' evaluation of defense credibility to affect their judgment in the punishment phase. Similarly, the trial judge may consider a defendant's untruthfulness at trial as a factor in determining his potential rehabilitation and the consequent sentence. *United States* v. *Grayson* (1978), 438 U.S. 41.

We conclude that counsel's duty to select among possible defense positions does not deny his client effective assistance. Further, this defendant's personal credibility was never in issue here, since he did not testify. He offered no evidence of mitigating factors, so his counsel's credibility in weighing such factors could not have affected jury deliberations. He fails to explain what possible defense was compromised, so he has not demonstrated any prejudice in this case. This contention lacks merit.

### B. Prejudicial Voir Dire Questions

Defendant complains that the court and counsel prejudiced the jury by asking them about capital punishment attitudes. He argues that the jury lost its ability to make an impartial decision about his guilt or innocence after such questioning. He contends that he was denied a fair trial by an impartial jury, because the possible penalty was discussed before his guilt was adjudicated.

As discussed below, the state can challenge jurors for cause if their attitudes on this subject necessarily preclude a guilty verdict or death sentence recommendation. See Part IV of this opinion. Further, both counsel may wish to consider such attitudes in exercising their respective peremptory challenges. Cf. *Barge* v. *House* (1952), 94 Ohio App. 515 [52 O.O. 300]. Since the same jury must decide both guilt and punishment enhancement, these attitudes can only be explored when the jury is originally empanelled.

In substance, defendant claims that the prejudicial effect of such questions greatly outweighs its proper uses. He cites no authority to support that proposition, and we have found none.

The federal Constitution prevents imposition of the death penalty if the court excuses jurors who disapprove of capital punishment but agree to follow the court's instructions. *Witherspoon* v. *Illinois* (1968), 391 U.S. 510. However, no constitutional provision guarantees that defendant will have jurors who oppose capital punishment. *Adams* v. *Texas* (1980), 448 U.S. 38, at 44-45. The prosecutor may ask jurors about these attitudes when the jury has no part in deciding whether enhancement applies. *Lockett* v. *Ohio* (1978), 438 U.S. 586, at 595-597 [9 O.O.3d 26]. Therefore, the state's ability to consider those attitudes in deciding upon challenges for cause or peremptory challenges would not seem to violate defendant's rights.

In balance, we believe that jurors are less likely to convict when they learn that conviction may lead to capital punishment. Traditionally, the state resists communicating information to jurors about punishment, in the belief that they will be less likely to convict with that knowledge. Cf. *State* v. *Aldridge* (1981), 3 Ohio App. 3d 74, at 76-78. Consequently, we disagree with defendant's contention that juror knowledge of a possible death penalty unreasonably prejudices their deliberations about guilt. Cf. *California* v. *Ramos* (1983), 77 L.Ed. 2d 1171, at 1186-1187 (knowledge of the governor's power to commute death penalty may increase juror willingness to find guilt). The alleged prejudicial effect of such questioning does not outweigh its value for proper purposes.

### C. Equal Protection

Defendant contends that the punishment enhancement provisions for aggravated murder unreasonably authorize greater punishment for one class of violators than another. Homicide constitutes aggravated murder if the offender purposely caused the death (a) with prior calculation and design, or (b) in the course of a listed felony. R.C. 2903.01. Without proof of an additional aggravating circumstance, aggravated murder is punishable by life imprisonment with parole eligibility after twenty years.

When the state proves at least one of eight aggravating circumstances (R.C. 2929.04[A]), the punishment can be enhanced to parole eligibility after thirty years or death. R.C. 2929.03(D). In this case, the punishment was thereby enhanced to parole eligibility after thirty years. Defendant argues that the enhancement factor for aggravated murder differs unreasonably between offenses committed with prior calculation and offenses committed during listed felonies.

Defendant cites decisions which invalidate statutes where the enhancement factor duplicates an element of the basic offense for one class of offenders. *State* v. *Silhan* (1981), 302 N.C. 223, 261-262, 275 S.E. 2d 450, at 477-478; *Provence* v. *State* (Fla. 1976), 337 So. 2d 783. See, also, *Bufford* v. *State* (Ala. Crim. App. 1980), 382 So. 2d 1162; *State* v. *Cherry* (1979), 298 N.C. 86, 257 S.E.2d 551. In those cases, commission of the same felony murder constituted both the basic offense and an aggravating circumstance which justified penalty enhancement. For a discussion of that issue, see Capital Punishment in Ohio: Aggravating Circumstances (1982), 31 Cleve. St. L. Rev. 495, 518-520.

Defendant argues that commission of aggravated robbery constituted both the penalty enhancement circumstance here and an element of the aggravated murder charge. He was convicted of aggravated murder for felony murder. R.C. 2903.01(B) states:

"No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape."

The jury also found that the state proved the aggravating circumstance defined by R.C. 2929.04(A)(7), which states:

"The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

Defendant notes that the penalty for aggravated murder with prior calculation and design cannot be enhanced without proof of a separate aggravating circumstance. He complains that the penalty for aggravated murder for a felony murder can be enhanced with no other proof.

An examination of the two statutory sections requires us to reject defendant's contention. Homicide constitutes aggravated murder when the offender purposely causes death during a listed felony, whether he is the principal offender or an aider and abettor. R.C. 2903.01(B). The code expressly allows the jury to infer a purpose to kill from the accused's participation in a violent offense. R.C. 2903.01(D) provides:

"* * * If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the specific intent of the person to have caused the death by proof beyond a reasonable doubt."

Thus, proof that an accused committed aggravated murder does not require proof that he was a "principal offender in the commission of the aggravated

118

murder." The state must prove the defendant was "the principal offender" in the aggravated murder (or acted with prior calculation and design) for this aggravating circumstance. Thus, the state must prove an additional element to establish this enhancement factor for a felony murder conviction.

The Ohio Supreme Court considered a closely related issue when it rejected an equal protection attack on the aggravated burglary statute. In *State* v. *Wilson* (1979), 58 Ohio St. 2d 52 [12 O.O.3d 51], the court stated at 55-58:

"Turning to the equal protection argument, appellant contends that the trial court erred by sentencing him pursuant to R.C. 2911.11(A)(3), because it prohibits the same activity as R.C. 2911.12, the burglary statute. He then argues that, because R.C. 2911.11(A)(3) carries a heavier penalty than R.C. 2911.12, the former violates the Equal Protection Clause.

"* * *

"In a prosecution for a violation of R.C. 2911.11, aggravated burglary, the state must prove the same elements as the crime of burglary with the addition of one of three aggravating circumstances. It is because the state must prove this additional element that the statute does not violate the Equal Protection Clause." (Citations omitted.)

The same rationale applies here.

We recognize that the extent of a non-principal offender's non-participation is also a mitigating factor. R.C. 2929.04(B)(6). However, mitigating factors are weighed only when the state first proves an aggravating circumstance. R.C. 2929.04(B). Therefore, the two provisions on this subject are complementary rather than conflicting.

This contention also lacks merit.

### D. The Death Penalty

In a single sentence, defendant's brief urges that capital punishment necessarily violates federal constitutional guarantees for equal protection and restrictions against cruel and unusual punishment. The United States Supreme Court has repeatedly rejected that contention. See, *e.g., Proffitt* v. *Florida* (1976), 428 U.S. 242; *Eddings* v. *Oklahoma* (1982), 455 U.S. 104; *Estelle* v. *Smith* (1981), 451 U.S. 454; *Lockett* v. *Ohio, supra.*

Further, this defendant has no standing to raise that issue because he was not sentenced to death.

Defendant's constitutional challenges of these sentencing procedures are not well-taken. His third assigned error is overruled.

### IV

Defendant's fourth assigned error challenges the jury selection process. He argues that the court erred by excusing one potential juror and two potential alternates. Those tentative jurors expressed antipathy toward capital punishment which precluded their concurrence in a guilty verdict despite any evidence.

R.C. 2945.25(C) expressly authorizes a challenge for cause in that situation:

"A person called as a juror in a criminal case may be challenged for the following causes:

"* * *

"(C) In the trial of a capital offense, that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. A prospective juror's conscientious or religious opposition to the death penalty in and of itself is not grounds for a challenge for cause. All parties shall be given wide latitude in voir dire questioning in this regard."

That procedure does not violate an accused's constitutional right to due process. *Adams* v. *Texas, supra.*

In this case, the jury decided that the death penalty was not justified. The court did not impose a death sentence.

Thus, the fact that all jurors were willing to recommend capital punishment could not be prejudicial here, even if it were improper. Further, defendant's counsel expressly acquiesced in the state's request to excuse the regular juror and failed to object when the court excused the two alternates. In these circumstances, defendant's failure to object at trial waived any complaint about the procedure used. The procedure was not plain error described by Crim. R. 52(B), even if it had been error. Cf. *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178].

Defendant's fourth claimed error is overruled.

## V

Defendant's final assignment of error disputes the replacement of a seated juror with an alternate at the outset of the last day of testimony. The court received a call from the empanelled juror who reported that her sister had become critically ill. The juror reportedly denied an ability to concentrate at the trial, asserting that she was "incoherent at times and very emotionally upset." The judge related those circumstances to all counsel and then replaced the missing juror with the first alternate, over defendant's objection.

The court has authority to replace jurors with alternates when the jurors "become or are found to be unable or disqualified to perform their duties." Crim. R. 24(F); see, also, R.C. 2945.29. Defendant argues that his counsel should have been given an opportunity to examine the disabled juror, before the court excused her.

Neither the rule nor the statute requires the court to examine the reportedly disabled juror personally. Neither authority requires the court to offer counsel an opportunity to do so. When feasible, the better practice would call for an examination of the disabled juror by the court or counsel on the record. Cf. *State* v. *Sallee* (1966), 8 Ohio App. 2d 9 [37 O.O.2d 5]. In that way, all interested persons could be assured that the replacement is appropriate.

However, an in-court examination of a reportedly disabled juror is not always feasible. The juror's infirmity or other disability may preclude the juror from appearing in court for an extended interval, and thereby significantly disrupt orderly proceedings. In this case, the juror reported that her sister's sudden critical illness would mandate the juror's attention indefinitely. Defense counsel agreed that a telephone interview would suffice to satisfy him, but he made no attempt or request to establish telephone contact then. Instead, he requested that all proceedings be postponed to the next trial day — after an intervening weekend and a holiday.

The trial court has discretion to determine when a reportedly disabled juror should be replaced by the appropriate alternate before deliberations begin. *State* v. *Sallee, supra.* Absent a record showing that the court abused that discretion, we presume regularity. *Beach* v. *Sweeney* (1958), 167 Ohio St. 477 [5 O.O.2d 157]. Defendant has failed to demonstrate that the court acted unreasonably or that defendant was prejudiced by the court's action.

Defendant's fifth claimed error lacks merit. The trial court's judgment is affirmed.[1]

*Judgment affirmed.*

NAHRA, J., concurs.

DAY, P.J., concurs separately.

---

[1] Two months after this appeal was submitted for decision, defendant personally submitted a purported "Supplemental Appeal Brief." That untimely document seeks to

DAY, P.J., concurring. I concur in the judgment and add a few words of explanation.

I am troubled by a possibility lurking in the proposition:

"The state must prove the defendant was 'the *principal offender*' in the aggravated murder (or acted with prior calculation and design) for this aggravating circumstance." (Emphasis added.) Part III C, *supra.*

The conventional rule is that principals and aiders and abettors stand in the same shoes.[2] If the narrow interpretation given "principal" (the direct actor) in this case should revert in some other case to the more conventional definition, then clearly the possibility exists that a defendant's single act may both convict and aggravate.[3] Should that occur, double jeopardy becomes a reality and unconstitutional consequences may follow.[4]

MARKUS and NAHRA, JJ., concur in the foregoing concurring opinion.

---

assert four assignments of error which differ somewhat from the assignments presented by his counsel's brief. We do not accept these untimely claims as properly before this court. Further, we conclude that each of the new assigned errors lacks merit.

Defendant fails to exemplify by his new claimed errors that the court would not permit an acquittal or a jury disagreement (No. 1), or that the court "took a personal interest in convicting" him (No. 3). Contrary to defendant's claim (No. 2), the record shows that the jury was sequestered during their deliberations on both the guilt determination phase and the punishment determination phase of the trial. Defendant's argument regarding the court's instructions during jury deliberations (No. 4) was considered and rejected in similar circumstances by the Supreme Court in *State* v. *Maupin* (1975), 42 Ohio St. 2d 473, 482-485 [71 O.O.2d 485].

[2] The fact that the General Assembly intended to equate the prosecution and punishment of principals, aiders, abettors, and procurers is clear from R.C. 2923.03(B), which provides that it is no defense to a charge of complicity that no person with whom the accused was in complicity has been convicted as a principal offender. R.C. 2923.03(A)(2) and (F) provide that one who aids and abets another in committing an offense is guilty of the crime of complicity, and may be prosecuted and punished as if he were the principal offender. *State* v. *Bell* (1976), 48 Ohio St. 2d 270, 278-279 [2 O.O.3d 427].

[3] Cf. *State* v. *Silhan* (1981), 302 N.C. 223, 261-262, 275 S.E. 2d 450, 477-478; *State* v. *Cherry* (1979), 298 N.C. 86, 113-114, 257 S.E. 2d 551, 567-568.

[4] See *State* v. *Cherry, supra,* at 113, 257 S.E. 2d at 567:

"Once the underlying felony has been used to obtain a conviction of first degree murder, it has become an element of that crime and may not thereafter be the basis for additional prosecution or sentence."