JOURNAL ENTRY AND OPINION
Defendant-appellant, Robert Cosic, appeals his conviction for aggravated menacing in violation of Parma Codified Ordinance 636.04, a misdemeanor of the first degree, entered upon a jury verdict in Parma Municipal Court. Appellant claims that the trial court committed reversible errors at trial, the evidence was insufficient to convict him and his conviction was against the manifest weight of the evidence presented. We find no reversible error and affirm.
The record demonstrates the following facts. On October 20, 1998, appellant was charged with aggravated menacing based upon a complaint which alleged that on October 19 appellant threatened Savo Tatalovic with a firearm and made threatening and abusive gestures to Tatalovic while their vehicles were at the intersection of Snow Road and Pearl Road in Parma, Ohio. On October 29, 1998, appellant entered a plea of not guilty to the charge against him and subsequently requested a jury trial. On January 26, 1999, appellant filed a notice of alibi. Jury trial commenced on February 2, 1999.
At trial, the City presented the testimony of three witnesses. The complainant-witness, Savo Tatalovic, testified that he first met Alenka Cosic, the estranged wife of appellant, in July 1998 when he served as a Serbian-English translator for her legal appearances. His daughter had previously served as Alenka's translator, but was unable to continue in that function due to her overseas travel, so his daughter arranged for him to serve as Alenka's translator. Tatalovic had never met or seen appellant until October 19, 1998, the day of the menacing incident. That morning, Tatalovic was scheduled to act as interpreter in Domestic Relations court for Alenka. Although a driver from the shelter planned to transport Alenka to the courthouse, on that morning the driver called Tatalovic and requested he pick up Alenka. He agreed and met Alenka and her infant daughter at her Grantwood home. They planned to take the baby to Tatalovic's home where his wife would babysit. However, after he picked up Alenka, as he drove down Grantwood toward 54th Street, appellant, driving a red car, started following and chasing them. Tatalovic sped up to get in front of appellant, but appellant cut him off. Tatalovic turned onto Snow Road with appellant following them. During this chase, the vehicles switched lanes, but as the vehicles reached the Pearl Road intersection of Snow Road, appellant pulled his car alongside Tatalovic's truck, brandished a black hand-gun, called him a "motherfucker" and threatened him with a Serbian gesture signifying that appellant would "kill" Tatalovic. Appellant directed him to open his window, but Tatalovic refused because he was scared. Alenka, who was sitting in the passenger seat, became upset and turned her head away from appellant. Tatalovic proceeded to his own house. Upon arrival, Tatalovic ran from his truck into the house where he placed a call to Detective Tom Bunyak at the Parma Police Department. When he came out of his house appellant's car was gone, so he and Alenka continued to the courthouse for the scheduled hearing. At the courthouse, Tatalovic and Alenka met with Alenka's attorney and appellant's attorney; but, appellant failed to appear. They returned to Tatalovic's home and that afternoon Tatalovic went to the Parma Police Station where he made a statement describing the incident. Later that evening, Tatalovic received a telephone call from appellant who threatened him again by saying "You motherfucker I bury you next to your mother." Tatalovic testified that he stopped working as a translator for Alenka Cosic due to his fear of appellant stemming from this incident.
Next, Alenka Cosic, appellant's estranged wife and an eyewitness to the events, testified through a Serbian-English interpreter that although she and appellant had been married in June 1996, divorce proceedings have been instituted and they have not lived together since July 28, 1998, when appellant was required to move out of the marital residence after she had secured a protective order. She said that on the morning of October 19, Mr. Tatalovic, her interpreter, picked her up at her home on Grantwood to take her to a court appearance relating to the divorce. Her eighteen-month-old daughter was with her because she planned to take the baby to stay with Tatalovic's wife. When they reached Grantwood and 54th Street she first saw appellant who was alone in his red car. Appellant beeped his horn, made gestures with his hands, pulled up on the right side of Tatalovic's truck and told her to open the window, but she refused. When the vehicles were stopped at Pearl Road, she said appellant threatened Tatalovic with both words and gestures. Although she avoided looking at appellant because she feared him, she was able to hear Tatalovic say appellant had a gun. When she and Tatalovic arrived at his house they ran inside, dropped off the baby and Tatalovic called Detective Bunyak. Then, she and Tatalovic proceeded to the courthouse for a 9:00 a.m. hearing in Domestic Relations Court. However, when appellant failed to appear for the hearing, she and Tatalovic returned to his house to pick up her baby. That same day, they filed a police report about the incident. On cross-examination, Alenka testified that she is "always truthful." However, she conceded that when she came to the United States she changed her son's last name to her maiden last name.
Finally,.. Detective Thomas Bunyak, a thirty-year veteran of the Parma Police Department, testified that he became familiar with appellant in July 1998, when the Parma Court issued a temporary protective order to restrain appellant from having any contact with his wife, Alenka Cosic. Det. Bunyak came to know Savo Tatalovic during that same time period because Tatalovic was Alenka's interpreter. Det. Bunyak noted that a special provision in the restraining order required appellant to turn in his weapons and, as a result, Det. Bunyak assisted in the removal of about twenty-one weapons, both handguns and hunting weapons, from appellant's house by way of an agreed court order. During his October 19 shift, which began at 4:00 p.m., Det. Bunyak became aware that earlier in the day Tatalovic filed a police report. He contacted Tatalovic to begin an investigation. He took Tatalovic's verbal statement over the phone and reviewed the information in Tatalovic's written statement regarding the incident. Uniformed officers were dispatched to look for appellant but they were unable to find him at that time. During the investigation, Det. Bunyak learned that appellant owned a red car and two other vehicles, a truck and a van. One week prior to trial, Det. Bunyak was made aware of appellant's alibi witness Paula Kozumplik and he interviewed her. On cross-examination, Det. Bunyak conceded that there was no physical evidence to prove that appellant was at the intersection of Pearl Road and Snow Road when these events occurred.
The state rested its case. Appellant presented two witnesses in his defense. First, Paula Kozumplik, appellant's alibi witness, testified that appellant was at her house the morning of October 19. She said that morning she arose a little after 8:00 a.m. She and appellant left her house around 8:30 a.m. to pick up his vehicle a few streets away, a five to eight minute trip. On cross-examination, Ms. Kozumplik admitted that the night before she and appellant's niece went to the Swing Inn at 7:00 p.m. where they drank "quite a lot" and remained until closing at 2:00 a.m. She said appellant arrived at the bar at 10:00 or 10:30 p.m. and when the bar closed, all three returned to her apartment. Appellant left his truck and his niece left her car at the bar when they left. Ms. Kozumplik admitted that when Det. Bunyak interviewed her prior to trial, she told him that she dropped appellant off to pick up his car at "either 8:00 or 8:30," but she knows that she dropped appellant off at 8:30 a.m. that morning. On re-direct examination, Ms. Kozumplik testified that she had no reason to fabricate her testimony.
Finally, appellant testified on his own behalf. He stated that he currently resides separate from his wife Alenka, because a divorce action is pending and she is trying to press charges against him. He testified as to his alibi defense as follows. He said on the night before the alleged incident he stayed all night at Paula Kozumplik's house. He arrived there 2:15 a.m. and arose after 8:00 a.m. He testified that although he owns a red car, he did not operate it on October 19, 1998. He said that sometime after 8:30 a.m., Paula Kozumplik drove him to the Swing Inn where he picked up his Ford Econoline van which he left there the night before. Appellant denied that he pulled a gun and threatened Tatalovic with sign language. He stated that he did not have any firearms in his possession on October 19, nor had he ever been accused of violating a restraining order. He said that it is his opinion that his estranged wife brought Tatalovic into this situation and they "trumped up" the charges against him because he refused to go the immigration board with her on August 2, 1998. On re-direct examination, appellant stated that after he relinquished his firearms to the police pursuant to the agreement, he had not purchased, been given, or possessed any firearms.
The defense rested and the trial court submitted the case to the jury following closing arguments and its instructions. On February 3, 1999, the jury found appellant guilty of aggravated menacing. The trial court sentenced appellant to one hundred eighty days in jail and imposed, but suspended, a fine of two hundred fifty dollars. Appellant moved for mitigation of his sentence and for a stay of execution of his sentence which were denied by the trial court. Appellant timely appealed and filed for an emergency stay of execution of his sentence pending the appeal which was denied by this court.
In this appeal, appellant advances five assignments of error for our review.
 I. THERE WAS INSUFFICIENT EVIDENCE WITH WHICH TO SUPPORT THE JURY'S FINDING OF GUILTY WITH RESPECT TO THE OFFENSE OF AGGRAVATED MENACING.
 II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED IN REFUSING TO ALLOW DEFENSE COUNSEL TO IMPEACH THE CREDIBILITY OF A PROSECUTION WITNESS DURING CROSS-EXAMINATION.
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON DEFENDANT'S ALIBI DEFENSE.
 V. THE TRIAL COURT ERRED IN DENYING THE JURY'S REQUEST TO RE-HEAR A PORTION OF THE VICTIM'S TESTIMONY.
In his first assignment of error, appellant claims that the evidence presented at trial was insufficient to sustain a conviction.
"Sufficiency of the evidence is the legal standard applied to determine whether the case may go the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541, 546. When the appellant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.Jackson v. Virginia (1979), 443 U.S. 307, 319; State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed unless this court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Id. at 273.
Appellant was convicted of aggravated menacing in violation of Parma Codified Ordinance 636.04, which provides in pertinent part that:
 No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person, such other persons unborn or a member of the other person's immediate family.
We find that the facts in the record when viewed in the light most favorable to the prosecution, support a finding beyond a reasonable doubt of the essential elements of aggravated menacing as charged. The trial testimony demonstrates that both witnesses to the event heard appellant threaten the victim with serious physical harm. The victim testified that he believed appellant's threats made while appellant was brandishing a hand gun and was using Serbian gestures threatening his life. Appellant's estranged wife, the other witness to the events, saw appellant chase them with his car, overheard and saw appellant's threats to the victim and testified as to her fear. Therefore, it can be said that sufficient evidence exists in the record, when viewed in a light most favorable to the prosecution, to show that appellant knowingly caused the victim, Savo Tatalovic, to believe that appellant was going to cause serious physical harm to him.
Accordingly, we find appellant's first assignment of error to be without merit.
In his second assignment of error, appellant claims that his conviction was against the manifest weight of the evidence.
To determine whether a conviction is against the manifest weight of the evidence presented, this court examines the entire record to determine whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction. State v. Getsy (1998), 84 Ohio St.3d 180. The question is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, at the syllabus. In determining whether the decision of a trial court is against the manifest weight of the evidence, the following factors are guidelines and may be taken into account by the reviewing court: 1) the reviewing court is not required to accept as true the incredible * * *; 2) whether the evidence is uncontradicted * * *; 3) whether a witness was impeached * * *; 4) what was not proved * * *; 5) the certainty of the evidence * * *; 6) the reliability of the evidence * * *; 7) whether a witness' testimony is self-serving * * *; and 8) whether the evidence is vague, uncertain, conflicting or fragmentary.State v. Mattison (1985), 23 Ohio App.3d 10, 14. Moreover, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, when we review the entire record, we find that the trial testimony reveals that the victim and the eyewitness testified to the events of the morning of October 19 with testimony, which was consistent, credible, and not impeached. The testimony of the victim and witness was not vague, uncertain, conflicting or fragmentary. The victim testified that appellant followed them in a red car, threatened him with both words and gestures and brandished a hand gun while making the threats on his life. The witness corroborated the victim's account and, although she did not see the weapon, she admitted that during the encounter she had turned away from appellant in fear, but she heard the victim acknowledge that appellant had a weapon. On the other hand, appellant denied that he committed the crime and he supported his position with an alibi witness who said he was with her at the approximate time of the incident. Therefore, when we weigh the evidence and all reasonable inferences and when we consider the credibility of the witnesses, we conclude that the jury did not lose its way in finding appellant guilty of aggravated menacing, thus, we find no manifest miscarriage of justice occurred and we find appellant's conviction was not against the manifest weight of the evidence.
Accordingly, we find appellant's second assignment of error to be without merit.
In his third assignment of error, appellant contends that the trial court committed plain error when it refused to allow appellant's counsel to impeach the prosecution witness' testimony with evidence to show that she was not a truthful person. Specifically, appellant claims that impeachment evidence which shows that a witness is not a truthful person is permitted by Evid.R. 608 and the court erred in its refusal to permit the line of questioning.
The trial court has broad discretion in the admission or exclusion of relevant evidence at trial. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Abuse of discretion is a term used to describe a trial court's actions which were arbitrary, unreasonable or unconscionable. See Statev. Adams (1980). 62 Ohio St.2d 151.
The record does not demonstrate any objection or challenge to any evidentiary determination made by the court. Thus, appellant waived all error but plain error. Crim.R. 52(B); State v.Campbell (1994), 69 Ohio St.3d 38, 49; State v. Thompson (1998),127 Ohio App.3d 511, 522. An alleged error "does not constitute plain error * * * unless but for the error the outcome of the trial would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Appellant relies upon Evid.R. 608(B) which provides that:
 "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The trial court has the discretion to determine whether the alleged prior conduct is "clearly probative of truthfulness or untruthfulness." State v. Shields (1984), 15 Ohio App.3d 112;State v. Williams (1981), 1 Ohio App.3d 156. Thus, it was within the sound discretion of the trial court to determine whether the specific conduct relating to the witness' changing her child's name on official government documents without legal authority to do so was clearly probative of her truthfulness or untruthfulness. State v. Boggs (1992), 63 Ohio St.3d 418.
Appellant has failed to specify and we are unable to discern from the record whatever further information he sought to introduce that might have been "clearly probative" of this witness' character for truthfulness or untruthfulness. Therefore, we are unable to conclude that the asserted limitation of the witness' cross-examination by the court constituted an abuse of the trial court's discretion. Moreover, we find no abuse of discretion in the trial court's determination that the listing of her child's name on government documents was not relevant to the case and would lead to a distracting inquiry into entirely unrelated matters.
However, even if we assume that error occurred in excluding this evidence, here we find such error was harmless. An error in excluding evidence is harmless "if such evidence would not negate the overwhelming proof of defendant's guilt." State v. Gilmore
(1986), 28 Ohio St.3d 190, 193; State v. Williams (1983), 6 Ohio St.3d 281. We find that the evidence showing that Alenka Cosic used her maiden name as her son's surname on government documents when she came to the United States would not have changed the jury's verdict finding appellant guilty of aggravated menacing. Due to the City's substantial evidence of appellant's guilt, any possible error was harmless.
Accordingly, appellant's third assignment of error is without merit.
In his fourth assignment of error, appellant contends that the trial court committed plain error in failing to instruct the jury on his alibi defense. Specifically, in reliance on State v.Bridgeman (1977), 51 Ohio App.2d 105, appellant asserts that such failure constitutes reversible error.
A court is required to charge the jury with all matters of the law necessary for the information of the jury in giving its verdict. R.C. 2945.11. Although appellant offered evidence of alibi, he failed to request the court to give an instruction to the jury on alibi. Moreover, the record demonstrates that appellant entered no objection to the jury instructions as given as required by Crim.R. 30. Thus, we review this asserted error under the plain error standard. State v. Fears (1999), 86 Ohio St.3d 329; State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
Appellant relies on the determination made by this court inState v. Bridgeman, supra, which considered the trial court's failure to give an alibi charge and held that: "such a charge is a matter of right and not of request. To fail to give such a charge is a plain error or defect affecting the defendant's substantive rights within the framework of Criminal Rule 52(B)."Bridgeman, supra, 122.
However, subsequent to this court's decision in Bridgeman, the Ohio Supreme Court in State v. Long, supra, announced its more restrictive interpretation of the "plain error doctrine" in its syllabi as follows:
 1. Ordinarily, the failure to timely object to a jury instruction violation of R.C. 2901.05(A) [governing burden of proof of an affirmative defense] constitutes a waiver of any claim of error relative thereto. Crim.R. 30.
 2. A jury instruction violative of R.C. 2901.05(A) does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.
 3. Notice of plain error under Crim.R. 52(2) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.
This court, in State v. Sims (1982), 3 Ohio App.3d 331, 335
applied the holding of Long, supra, to the trial court's failure to instruct the jury on defense of alibi where no objection was made and determined that "* * * the trial court's failure to include an instruction on the defense of alibi was clearly error." However, the Sims court went on to say "A trial court's failure to charge on an affirmative defense is far more damaging to a defendant than a failure to instruct on the defense of alibi, inasmuch as the defendant could be wrongfully convicted simply because the jury found that the defendant committed the act charged, and did not reach the question of whether the act was excusable or justified. In the case of alibi, no such possibility exists; if the defendant is found, beyond a reasonable doubt, to have committed the crime, then the jury necessarily must have considered and disbelieved the evidence of alibi." The Sims court concluded that "[t]he court's failure to charge the jury on alibi, though error, was not plain error, as that concept has been interpreted by the Ohio Supreme Court."
This court has since followed the reasoning as set forth inSims and has held that "where the record supports a finding of guilt beyond a reasonable doubt and appellant cannot show that the result would have been different had the jury been instructed on the defense of alibi, the failure to instruct is not reversible error. State v. Griffin (Aug. 25, 1988), Cuyahoga App. No 54238, unreported; State v. Wylie (Oct. 25, 1984), Cuyahoga App. No. 48012, unreported." State v. Mitchell (1989), 60 Ohio App.3d 106,108. In Mitchell, as here, the defendant filed a notice of alibi and relied upon it for his defense. Moreover, Mitchell requested an alibi instruction and objected to its denial, unlike the circumstances in the matter sub judice. Even so, the Mitchell court found that it was not unreasonable for the jury to disbelieve the alibi and find the defendant guilty beyond a reasonable doubt and held "[w]hether or not an alibi instruction is requested, the failure to give such an instruction is harmless error when the evidence clearly supports a guilty verdict beyond a reasonable doubt." Id. at 109.
In this appeal, we have found that appellant's conviction was supported by the manifest weight of the evidence. Further, in this appeal, appellant has failed to demonstrate that the error committed by the trial court in omitting a jury instruction on alibi rises to the level of plain error where he has failed to show that but for this error the outcome of his trial clearly would have been otherwise. Therefore, although the trial court erred in failing to deliver an alibi instruction, we find the omission of this instruction under the circumstances of this case did not constitute plain error.
Accordingly, appellant's fourth assignment of error is without merit.
In his fifth assignment of error appellant contends that the trial court erred in denying the jury's request to rehear a portion of the victim's testimony.
Whether any or all of the testimony of a witness is allowed to be read is within the sound discretion of the trial court. Statev. Berry (1971), 25 Ohio St.2d 255; State v. Higgins (1990),61 Ohio App.3d 414. As we have stated above, an abuse of the trial court's discretion is evidenced by a decision which is arbitrary, unreasonable or unconscionable. See State v. Adams, supra.
In this case, the jury submitted a question to the court in which it requested a review of the testimony of the witnesses in regards to the happenings at the corner of 54th Street and Pearl Road. In this assigned error, appellant additionally complains that the trial court failed to make a ruling on the request. However, the record demonstrates that the court, in response to the question, after consulting with both counsel and without objection by either counsel, stated that it would be "improper to do so [read the testimony] because it highlights some witnesses testimony over others and [the jury has] to view this case in its entirety." Without objection to the determination by the court, any error is harmless error, unless, but for the error, the outcome of the trial would have been otherwise. State v. Long,supra, paragraph two of the syllabus.
We find no abuse of the trial court's discretion in its refusal to read the testimony of the witnesses to the jury during the deliberations on the basis that it is improper to highlight some witnesses testimony over others.
Accordingly, appellant's fifth assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ TIMOTHY E. McMONAGLE, JUDGE
 PORTER, J. CONCURS; DYKE. A. J., CONCURS IN JUDGMENT ONLY.