OPINION
{¶ 1} Appellant, Deshawn Pruitt, appeals from the judgment of the Trumbull County Court of Common Pleas convicting him of one count of Felonious Assault, a felony of the second degree.
 {¶ 2} On July 31, 2001, the Trumbull County Grand Jury indicted appellant on one count of attempted murder, a felony of the first degree, in violation of R.C. 2923.02(A) and 2903.02(A), and one count of felonious assault, a felony of the second degree, in violation of R.C.2903.11(A). Appellant was also charged with a firearm specification as to each underlying count pursuant to R.C. 2941.14.5. The matter proceeded to a jury trial where the following facts were established:
 {¶ 3} On May 18, 2001, Arthur Drayton was with his cousin, Albert Taylor, and two acquaintances, known only as "Juice" (a.k.a. "Nut") and "Super," when he heard a commotion outside his apartment. As the disturbance grew louder, Mr. Drayton stepped outside where he discovered Tiona Jones and a woman named Mika. The pair appeared to be arguing over the nature of each woman's respective association with a young man named Kendrick.
 {¶ 4} After asking the pair to take their argument elsewhere, Mr. Drayton walked back into his apartment. As he entered, a young man named Tajaun followed him with Ms. Jones in close pursuit. Once inside, Ms. Jones began arguing with Tajaun. Mr. Drayton, apparently concerned that Ms. Jones would harm Tajuan, suggested that she take her concerns to the boy's mother as he was a minor. Mr. Drayton further requested that Ms. Jones take her disagreement outside and away from his apartment. Ms. Jones took exception to Mr. Drayton's remarks, cursed at him, and took a swing at him, scratching his face. At this point, Mr. Drayton and Ms. Jones engaged in a brief "tussle." After this physical confrontation, Ms. Jones left but advised Mr. Drayton that she intended to return with her cousin.
 {¶ 5} Approximately an hour later, Ms. Jones returned with three men. While two remained outside the apartment, the third unceremoniously entered with Ms. Jones. Once inside, Ms. Jones shouted, "that's him," and her male compatriot began shooting. Meanwhile, Juice and Super exited the apartment and Mr. Drayton retreated to his bathroom where he hid. While hiding, Mr. Drayton realized he was shot. Eventually, Warren City Police and an ambulance arrived, apparently summoned by Mr. Drayton's neighbors.
 {¶ 6} Mr. Drayton testified that his assailant was approximately six feet from him when the shooting commenced. He described the shooter as dark skinned, 150-165 pounds, with braided hair, and "cheek bone" facial hair. On May 22, 2001, Mr. Drayton viewed a six-person photo array and selected appellant's photograph indicating he was 90 percent certain as to the identification of the shooter.
 {¶ 7} Appellant filed no reciprocal discovery in this case, nor did he file a notice of alibi. However, the trial court permitted appellant to call his father, Alvin Pruitt, and Lisa Jennings as alibi witnesses to testify that appellant was cutting grass at the time of the shooting. During his testimony, Alvin Pruitt confirmed that Tiona Jones and appellant are cousins.
 {¶ 8} Ultimately, the jury found appellant not guilty of the attempted murder charge, but guilty of the felonious assault charge and its accompanying firearm specification. The trial court sentenced appellant to a term of four years incarceration on the felonious assault count, and three years as to the firearm specification, with the latter term to run prior to and consecutive with the principal offense.
 {¶ 9} From this decision, appellant filed a timely notice of appeal. He now submits the following assignments of error for our review:
 {¶ 10} "[1.] The trial court abused its discretion by excusing a seated juror over the objections of trial counsel.
 {¶ 11} "[2.] The trial court abused its discretion by allowing the prosecution to reopen its case for the sole purpose of impeaching defense witnesses, to the prejudice of the appellant.
 {¶ 12} "[3.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 13} Under his initial assignment of error, appellant contends that the trial court abused its discretion by excusing the only African-American juror from the panel over the objection of appellant's trial counsel. As such, appellant maintains that he was prejudiced insofar as he was denied a jury of his peers.
 {¶ 14} Appellant premises his first assignment on his belief that the state made every effort to ensure there were no African-Americans on the jury panel. To buttress his belief, appellant underscores the alleged fact that the state utilized its only peremptory challenge on an African-American individual. However, we are unable to assess the ultimate validity of this claim inasmuch as the transcript of the voir dire proceedings is not before the court. It is patent that appellant, as the party challenging the trial court's decision must provide a reviewing court with a transcript of the proceedings in the trial court in order to demonstrate its claimed error. Without a transcript of the voir dire, this court is unable to determine whether the state's alleged use of its peremptory challenge was motivated by some prejudicial impulse. Instead, we must presume that the peremptory challenge was a non-prejudicial strategic decision. See, Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199 (holding that the failure to provide a transcript necessitates a presumption that the judgment and proceedings in the trial court were valid).
 {¶ 15} Nevertheless, the thrust of appellant's argument hinges on the excusal of Juror No. 3, an African-American, after the first day of testimony. The excusal arose from an allegation made by the prosecutor, and corroborated by courthouse security, that Juror No. 3 was seen leaving the courtroom and the courthouse talking with members of appellant's family after court was adjourned.
 {¶ 16} The court heard sworn testimony from Deputy Ray Deluga of the Trumbull County Sheriff's Department. Deputy Deluga was working security on the afternoon in question. He testified that Assistant Prosecutor Morrow came downstairs at the close of business and asked if Deputy Deluga could turn on the third floor security camera. Morrow appeared concerned and explained to Deputy Deluga that one of the jurors was conversing with the family members of the defendant. Deputy Deluga stated that he observed three individuals walk out of Courtroom No. 1. He recognized one as an older, African-American, male juror. Deputy Deluga specifically remembered the juror in question with an elderly, African-American woman who usually wore a hat. When the elderly woman was brought into chambers, she identified herself as Selena Pruitt, appellant's mother. The deputy did not know if the parties took the elevator or the stairs. However, he observed them on the first floor and then saw them leaving the courthouse together "still in a conversation mode." Deputy Deluga watched because the juror was leaving the courthouse and "lagging behind with the family members conversing with them in the front of the court." According to Deputy Deluga, the parties were conversing almost like they were friends.
 {¶ 17} Both Juror No. 3 and Mrs. Pruitt vehemently denied knowing each other and conversing. Juror No. 3 also assured the court that he could be fair and impartial because he did not know either party.
 {¶ 18} However, after hearing arguments from counsel, the trial court found that Juror No. 3 had inappropriate contact with appellant's family. In so doing, the court found that the improper contact was a non-racial justification for Juror No. 3's removal.
 {¶ 19} An abuse of discretion connotes more than simply an error of law or judgment; rather it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Mays, 11th Dist. No. 2001-T-0071, 2003-Ohio-63 at ¶ 14, citing State v. Adams
(1980), 62 Ohio St.2d 151, 157. A trial judge is empowered to exercise "sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired." State v. Hopkins
(1985), 27 Ohio App.3d 196, 198, citing United States v. Spiegle (C.A.5, 1979), 604 F.2d 961, 967. Put differently, the court has authority to replace jurors with alternates when the jurors "become or are found to be unable or disqualified to perform their duties." Crim.R. 24(F); see, also, R.C. 2945.29.
 {¶ 20} In the current matter, the trial court's determination was based upon imminently reasonable premises. After hearing testimony from the deputy working courthouse security, Juror No. 3, and appellant's mother, the trial judge found improper contact between Juror No. 3 and appellant's family and sustained the State's motion to release the juror.
 {¶ 21} The fundamental concern of the trial court in a scenario such as the one under consideration is juror bias. As we have previously indicated, "`It is beyond question that the right of trial by jury guaranteed by the constitution carries with it by necessary implication the right to a trial by jury composed of unbiased and unprejudiced jurors. This right being guaranteed, all courts are charged with the imperative duty of affording every litigant the opportunity of having his cause tried by an impartial jury'." (Emphasis sic). State v. Hopkins
(1985), 27 Ohio App.3d 196, 197, citing Lingafelter v. Moore (1917),95 Ohio St. 384, 387. Allowing Juror No. 3 to remain on the panel would have raised a substantial question as to whether the jury's impartiality would have been affected. Thus, because the state is no less entitled to an unbiased determination than appellant, the trial court was within its sound discretion when it excused Juror no. 3.
 {¶ 22} Finally, although appellant contends that the dismissal of Juror No. 3 was prejudicial, he has failed to demonstrate that he was prejudiced. The trial court has discretion to determine whether a reportedly disabled juror should be replaced by an appropriate alternate. Absent a record showing that the court abused its discretion, we presume regularity. State v. Shields (1984), 15 Ohio App.3d 112, 119. Thus, for the above stated reasons, appellant's first assignment of error is without merit.
 {¶ 23} In his second assignment of error appellant argues that the trial court abused its discretion by allowing the prosecution to reopen its case for the sole purpose of impeaching defense witnesses. Appellant acknowledges that the court has the discretion to permit a party to reopen its case; however, appellant notes that this discretion may be exercised only where the party to the reopening "offers evidence." R.C.2945.10(D) and 2315.01(D). As such, appellant asserts that the court abused its discretion by allowing the state to reopen its case for purposes of impeachment because impeachment does not involve offering evidence. This court disagrees.
 {¶ 24} For clarity it is necessary to fill in certain factual interstices: Early in the proceedings, appellant's trial counsel advised the court that he had been unable to locate his witnesses; as such, he refused to provide the names of the potential witnesses until he was certain they would testify. After the state rested its case, appellant offered two witnesses: Alvin Pruitt, appellant's father, and Lisa Jennings, a friend of appellant's family. Both witnesses testified to appellant's alibi, viz., that he was cutting another party's grass at the time of the shooting. However, appellant's counsel failed to file a notice of alibi pursuant to Crim.R. 12.1. Crim.R. 12.1 requires a defendant to file a notice of his intent to claim an alibi not less than seven days before trial unless the court in the interest of justice determines that such evidence should be admitted. As such, both the trial court and the prosecutor were unaware of appellant's intention to assert the above alibi.
 {¶ 25} Nevertheless, the trial court permitted appellant's witnesses to testify and instructed the prosecutor to proceed with his cross-examination. The defense rested late in the afternoon on August 22, 2001. The court noted that "the state is under a surprise now on the undisclosed alibi witness," and permitted the prosecutor to consider overnight whether he wished to call any rebuttal witnesses. On August 23, 2001, the debate over the alibi witnesses continued. The prosecutor submitted that while he received two names from the defense on the morning of August 22, 2001, the police did not supply the criminal histories of the witnesses until 2:00 p.m. that afternoon. Although the prosecutor had copies of said histories before his initial cross, he indicated he did not have enough time to thoroughly review them. Therefore, after a more rigorous inspection of the records, the prosecutor sought to reopen his case on August 23, 2001 to cross-examine appellant's two witnesses with their criminal record.
 {¶ 26} In light of the above facts, the trial court found that the state should be permitted to reopen its case to cross-examine the two witnesses. The court essentially balanced the equities and ruled accordingly. In particular, the court noted that it permitted appellant's alibi testimony notwithstanding the failure of notice. However, without notice the state did not have appropriate time to move forward and review all necessary materials for cross-examination. Hence, the court decided to permit the state to reopen its case for the limited purpose of cross-examining appellant's witnesses on their criminal records.
 {¶ 27} R.C. 2945.10 lists the order of proceedings during a trial. R.C. 2945.10(D) states, "*** the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order." It is well established that the trial court, in maintaining reasonable control over the mode and presentation of evidence, has wide discretion to permit evidence to be offered out of order. State v. Bayless (1976), 48 Ohio St.2d 73 paragraph three of the syllabus, vacated on other grounds (1978), 438 U.S. 911. To this end, a court may allow a party to reopen its case to present additional evidence. Columbus v. Grant (1981), 1 Ohio App.3d 96, 97.
 {¶ 28} Any claim that a trial judge erred in allowing testimony to be presented out of order must be accompanied by a demonstration of resulting prejudice. Bayless, 48 Ohio St.2d 73. Therefore, a decision by the trial court to allow a party to reopen its case to offer additional evidence will be reversed only upon a showing of an abuse of discretion.State v. Peterson (June 28, 1999), 12th Dist. No. CA98-08-178, 1999 Ohio App. LEXIS 2984, at 4.
 {¶ 29} As a threshold matter, appellant's contention that the state failed to "offer evidence" through impeachment is, at best, tenuous. Impeaching a witness is a means of attacking that witness' credibility. Credibility is generally understood as the witness' character for truthfulness or veracity. See Evid.R. 608. The impeachment of a witness, consequently, is intended to suggest that the witness' testimony is less than credible. As such, one does not offer tangible evidence through impeachment. However, one assuredly offers evidence (in the form of bias, convictions of crime, prior inconsistent statements, inter alia) that is designed to defang a witness' testimony and thereby undermine his or her credibility. Thus, appellant's assertion that the process of impeachment does not involve an offering of evidence is fundamentally erroneous, although strict impeachment is not viewed as substantive evidence.
 {¶ 30} Insofar as impeachment involves an offer of evidence, a court may permit a party to reopen its case for the purpose of impeaching a witness pursuant to R.C. 2945.10(D). However, it may do so only for good reason and in furtherance of justice. In the current case, the court permitted appellant to offer his alibi witnesses despite of the lack of notice. As a result, the court permitted the state to reopen its case to effectuate an informed cross-examination of appellant's alibi witnesses. The rulings were justified, even-handed, and done in furtherance of justice.[1]
 {¶ 31} However, it bears noting that even were we to find some procedural infirmity in the manner the evidence was presented, any resulting error was harmless. Evid.R. 614(A) states "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Pursuant to Evid. R.614(A), the trial court had the power to call appellant's alibi witnesses upon its own motion or at the state's suggestion. Once called, the witnesses were subject to cross-examination by either party. Although the trial court did not cite Evid.R. 614(A) as authority for recalling appellant's witnesses, the approach it used produced the same results. Therefore, as we can conceive of no prejudice to appellant due to the trial court's departure from the usual order of presentation, we must find appellant's allegation of procedural impropriety with regard to the state's impeachment of his witnesses to be without merit.
 {¶ 32} In his third and final assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. Appellant's position is principally grounded on his contention that he was convicted solely on the incredible testimony of the victim, Arthur Drayton. Specifically, appellant maintains that Mr. Drayton's testimony was fundamentally unreliable.
 {¶ 33} The Supreme Court of Ohio has established the following analysis to determine whether or not a conviction is against the manifest weight of the evidence. Specifically:
 {¶ 34} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins (1997), 78 Ohio St.3d 380, 387. An appellate court's discretionary power to grant a new trial, however, is to be reserved for only those exceptional cases in which the evidence weighs heavily against conviction. Id. Further, in the context of a manifest weight analysis, this court has previously held that the jury's determination turns on witness credibility. "[T]he assessment of credibility lies within the sound discretion of the trier of fact, whose assessment will not be overturned on appeal unless the testimony in question was completely lacking in credibility." State v. Williams (1996), 115 Ohio App.3d 24,45.
 {¶ 35} Initially, appellant notes that Mr. Drayton's identification was unreliable. That is, appellant points out that Mr. Drayton indicated he could not see the shooter very well. Specifically, appellant notes that Mr. Drayton suggested the sun was in his face when the shooter intruded into his home. Hence, appellant hypothesizes that Mr. Drayton could only see a silhouette or shadow; thus, his identification cannot be trustworthy.
 {¶ 36} Further, appellant maintains that Mr. Drayton's photographic identification was tainted. That is, appellant asserts that the police officer administering the photographic array falsely informed Mr. Drayton that his shooter was one of the six men in the array. Moreover, appellant takes issue with Mr. Drayton's claim that he was only ninety percent certain that appellant was the shooter when he picked out his photo.
 {¶ 37} Finally, appellant argues that his alibi witnesses support the conclusion that Mr. Drayton made a false identification. At base, appellant contends that his alibi witnesses had no incentive to lie for him and consequently, Mr. Drayton's identification was merely a false positive. Put differently, because his witnesses placed him elsewhere at or about the time of the shooting, Mr. Drayton's photo identification was mistaken. We shall treat these arguments in turn.
 {¶ 38} First, although Mr. Drayton was the only person to identify appellant as his assailant, we cannot conclude that his testimony was lacking in credibility. For instance, the record indicates that the shooter stood only six feet from Mr. Drayton. Moreover, Drayton had the presence of mind to see that his shooter was dark skinned, 150-165 pounds, had braided hair, and "cheek bone" facial hair. Such a detailed description is not consistent with appellant's belief that Mr. Drayton merely observed a silhouette. Moreover, Mr. Drayton had never met appellant before. However, he remembered Tiona Jones declaring that she would return with her "cousin," approximately one hour before the shooting. During trial, appellant's father confirmed that Ms. Jones and appellant were cousins. As such, Drayton's testimony was neither unreliable nor problematic with respect to its detail.
 {¶ 39} Further, the detective who provided Mr. Drayton with the photo lineup stated, "I asked him to look at the photos and if there was anyone in there that was a suspect, the person that shot him, identify him to me." These instructions do not suggest that the assailant's photograph was in the photo array. Thus, there is no ostensible irregularity in the manner that Mr. Drayton identified appellant through the photographic lineup.
 {¶ 40} Finally, the fact that appellant's alibi witnesses place him cutting grass across town at or near the time of the shooting does not preclude a jury from finding that appellant was the shooter. The jury, as the judge of witness credibility, can choose to believe or disbelieve the testimony of any witness. Apparently, the jury did not find appellant's witness' testimony credible. However, "[t]he fact that the jury did not believe appellant's argument does not establish that their verdict was against the manifest weight of the evidence." State v.Perry (May 2, 1997), 11th Dist. No. 96-T-5428, 1997 Ohio App. LEXIS 1789, at 4.
 {¶ 41} In order to find appellant guilty of felonious assault and the accompanying firearm specifications, the jury was required to find that appellant knowingly caused or attempted to cause physical harm by means of a deadly weapon, and that at the time of the offense, appellant had a firearm on or about his person, under his control or displayed the firearm, brandished the firearm to use it to facilitate the offense. No one disputed that Mr. Drayton was shot with a handgun and required medical treatment. The only issue was whether appellant was the shooter. Based on Mr. Drayton's identification, Tiona Jones' statement that she would return with her cousin, and appellant's father's testimony that Jones and appellant are cousins, the jury did not lose its way in convicting appellant of felonious assault with the accompanying firearm specification. Thus, appellant's third assignment of error is without merit.
 {¶ 42} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.
DONALD R. FORD, P.J., and JUDITH A. CHRISTLEY, J., concur.
[1] Although the foregoing analysis is apposite to the issue in this appeal, we would note that the more appropriate procedural course would have the prosecutor ask for a continuance to review the criminal records of appellant's alibi witnesses in lieu of permitting the state to reopen its case for purposes of cross-examination. Moreover, where the prosecutor fails to request a continuance, the trial court should allow the state to engage in some form of additional cross-examination in the rebuttal portion of trial rather than permit the reopening of the state's case.