OPINION *Page 2 
{¶ 1} Appellant, Brenda Sikola, appeals her conviction for one count of receiving stolen property.
 STATEMENT OF FACTS AND CASE {¶ 2} On September 15, 2005, appellant Brenda Sikola was indicted by the Richland County Grand Jury for one count of receiving stolen property, valued at more than five hundred dollars but less than five thousand dollars, in violation of R.C. 2913.51(A), a fifth degree felony. On September 27, 2005, appellant pleaded not guilty and the matter proceeded to trial.
 {¶ 3} On June 6, 2006, after the presentation of evidence, a jury found appellant guilty as charged. On June 12, 2006, the trial court deferred sentencing pending a presentence investigation. On July 31, 2006, appellant was sentenced to serve a three (3) year term of community control sanctions. Additionally, the trial court imposed a fine of $ 1,500.00 and ordered restitution.
 {¶ 4} It is from this conviction that appellant now seeks to appeal setting forth the following assignments of error:
 {¶ 5} "I. APPELLANT'S CONVICTION OF FELONY RECEIVING STOLEN PROPERTY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY REMOVING A JUROR IN THE MIDDLE OF TRIAL, WHERE THE JUROR INDICATED THAT HIS JUDGMENT WOULD NOT BE AFFECTED IN ANY WAY BY THE FACT THAT HE KNEW A DEFENSE WITNESS AND THAT HE WOULD BE ABLE TO DECIDE THE *Page 3 
CASE ON THE EVIDENCE PRESENTED AND THE LAW IN VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JURY OF HER PEERS."
 I {¶ 7} Appellant argues in her first assignment of error that the trial court verdict is against the sufficiency and manifest weight of the evidence.
 {¶ 8} In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "[T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 9} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. *Page 4 
 {¶ 10} In this case, appellant was charged with having committed one count of receiving stolen property in violation of R.C. 2913.51(A) which provides in pertinent part as follows:
 {¶ 11} "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
 {¶ 12} "(C) Whoever violates that section is guilty of receiving stolen property. Except as otherwise provided in this division, receiving stolen property is a misdemeanor of the first degree. If the value of the property involved is five hundred dollars or more and is less than five thousand dollars * * *, receiving stolen property is a felony of the fifth degree.* * *"
 {¶ 13} R.C. 2913.61(D)(2) states in pertinent part that "the value of personal effects * * * which retains its substantial utility for its purpose regardless of its age or condition, is the cost of replacing the property with new property of like kind or quality."
 {¶ 14} Appellant argues that the state failed to prove (1) that the alleged stolen property was the property of another; (2) that appellant knew or had reasonable cause to believe that the property was obtained through the commission of a theft offense; and (3) that the value of the property was five hundred ($ 500.00) dollars or greater. We disagree.
 {¶ 15} Appellant was charged with receiving a stolen camera valued at over five hundred dollars. Some of the evidence used at appellant's trial had links to a criminal trial of Milt Miley, appellant's brother, for the sexual abuse of Scotty F., a juvenile. *Page 5 
 {¶ 16} The evidence presented at appellant's trial was as follows. Appellant, Brenda Sikola, and Milt Miley are brother and sister. Appellant owns a business called The Quick Stop. The Quick Stop sells miscellaneous items including flea shop merchandise collected by Milt.
 {¶ 17} Milt became acquainted with two neighborhood boys, Scotty and Lee F. Scotty and Lee frequented both Milt's home and the Quick Stop, and sometimes did odd jobs for Milt. Scotty and Lee also did odd jobs for their aunt and uncle, Dr. and Mrs. Charles (aka Carlos) MacFarlane.
 {¶ 18} While performing a job at Linda and Charles (aka Carlos) MacFarlane's residence, Scotty stole a Canon Camera and bag which contained various pieces of camera equipment. Scotty subsequently gave Milt the camera and equipment, told Milt the camera and equipment were stolen, and then received twenty ($ 20.00) dollars from Milt in exchange for the camera and equipment.
 {¶ 19} In a separate criminal matter, Milt was charged with sexually abusing Scotty. The sexual abuse case proceeded to trial in May of 2005. During Milt's sexual abuse trial, evidence was presented regarding property which was recovered during the execution of a search warrant at Milt's residence for photographs and videotapes. Questioning regarding the search led to further examination about the possibility of other stolen property being located at Milt's residence. On cross-examination, and in order to discredit the victim's credibility, Milt's counsel asked Scotty if he had ever stolen a camera and given it to Milt. Scotty denied committing a theft. After the presentation of the evidence, Milt was convicted of committing the sexual offenses. *Page 6 
 {¶ 20} The cross-examination of Scotty regarding the possible stolen camera then led to a separate investigation by the Richland County Sheriffs Department. The investigation began with Deputy McBride listening to hundreds of conversations which had been taped from the jail where Milt was incarcerated. The conversations took place between Milt and his family members. It appears that Milt and his family members were seeking evidence to establish that Scotty had committed perjury regarding the theft of the cameras and they intended to use that information to move the court for a new trial in the sexual abuse case.
 {¶ 21} In a taped conversation dated May 25, 2005, between Milt and his mother, Mazell Miley, the following conversation occurred:
 {¶ 22} "Milton: Okay. Well, okay, so it's over the gun?
 {¶ 23} "Mazell: I guess.
 {¶ 24} "Milton: Well, that's Carlos, Carlos. . .whatever his name is. . .that's Linda's husband's gun. That's what I told Brenda, Scotty took the camera. And they took the camera. . .Even Scotty says he don't know nothing about no camera.
 {¶ 25} "Mazell: Yeah.
 {¶ 26} "Milt: See, he lied. He perjured himself."
 {¶ 27} In a taped conversation dated May 26, 2005, between appellant and Milt, the following conversation occurred:
 {¶ 28} "Milt: Still it's . . .it's their camera, so. . .
 {¶ 29} "Appellant: That's right, well not anymore. It's mine. . .Possession's 99.9 percent of the law." *Page 7 
 {¶ 30} As a result of listening to the taped conversations, on May 27, 2005, around 4:00 P.M. Deputy Snay contacted Dr. MacFarlane at his residence to investigate whether property had been stolen from his residence. During their conversation, Dr. MacFarlane notified the deputy that a camera and equipment and a gun had been taken from his home without his permission.
 {¶ 31} On May 27, 2005, Deputy McBride executed a search warrant at Milt's Quick Stop. It was late in the evening and the business was closed. The appellant was contacted to open the business. Upon arriving the deputy told the appellant that he was there to collect the stolen camera. At first the appellant stated, "what camera?" The appellant then entered the store, turned off the alarm and retrieved the stolen camera, camera equipment and developed photographs, and gave the items to the deputy. Appellant was then charged with one count of receiving stolen property.
 {¶ 32} During the trial, Scotty identified the camera and equipment which had been collected from the appellant as being the same equipment which he had taken without permission from the MacFarlane home.
 {¶ 33} The appellant testified that she found the camera at Milt's house and took it to the Quick Stop. She stated that during the sexual abuse trial, she learned from Milt that the camera might be stolen. She stated that she was concerned about the film in the camera and took the film to be developed. She stated that her intention was to give the camera and film to Milt's trial attorney. However she further stated that although she carried the camera in her car to several meetings with the attorney, somehow, the camera was never exchanged. *Page 8 
 {¶ 34} An expert in the field of camera exchange and repair testified that, at the time of the theft of the equipment, the replacement value of the merchandise would have been over five hundred dollars.
 {¶ 35} Based upon the record we find that there was sufficient evidence to establish that the appellant did receive and retain property of another knowing or having reasonable cause to believe that the property had been obtained during the commission of a theft offense and that the value of the property at the time of the theft was greater than five hundred dollars.
 {¶ 36} Accordingly, we hereby overrule appellant's first assignment of error.
 II {¶ 37} In the second assignment of error the appellant argues that the trial court abused its discretion by removing a juror during trial.
 {¶ 38} "`It is beyond question that the right of trial by jury guaranteed by the constitution carries with it by necessary implication the right to a trial by jury composed of unbiased and unprejudiced jurors. This right being guaranteed, all courts are charged with the imperative duty of affording every litigant the opportunity of having his cause tried by an impartial jury.'" (Emphasis sic). State v.Hopkins (1985), 27 Ohio App.3d 196, 197, 500 N.E.2d 323, citingLingafelter v. Moore (1917), 95 Ohio St. 384, 387, 117 N.E. 16.
 {¶ 39} A trial judge is empowered to exercise "sound discretion to remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty is impaired." State v. Hopkins (1985),27 Ohio App.3d 196, 198, 500 N.E.2d 323, citing United States v. Spiegle *Page 9 
(C.A.5, 1979), 604 F.2d 961, 967. Put differently, the court has authority to replace jurors with alternates when the jurors "become or are found to be unable or disqualified to perform their duties." Crim.R. 24(F); see, also, R.C. 2945.29. The trial court has discretion to determine when a reportedly disabled juror should be replaced by the appropriate alternate before deliberations begin. State v. Sallee
(1966), 8 Ohio App.2d 9, 220 N.E.2d 370 . Absent a record showing that the court abused that discretion which resulted in prejudice to the defense, the regularity of the proceedings is presumed. Beach v.Sweeney (1958), 167 Ohio St. 477, 150 N.E.2d 42. See also, State v.Shields (1984), 15 Ohio App. 3d 112, 472 N.E.2d 1110.
 {¶ 40} An abuse of discretion connotes more than simply an error of law or judgment; rather it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 41} In this case, during the voir dire, a list of witnesses was read to the jury. The list of witnesses included Jim Miley and Milton Miley. Jim Miley is the brother of witness, Milton Miley, and the appellant. Juror Brown participated in voir dire but did not indicate that he was familiar with Jim Miley or the Miley family. Juror Brown eventually came forward during trial and notified the trial court that he worked with Jim Miley in the Air Guard. The trial court then proceeded to question Juror Brown about his ability to participate in the proceedings.
 {¶ 42} During the court's questioning, Juror Brown indicated that he didn't initially recognize the name as being a co-worker and that he and Jim worked as mechanics in two separate areas of the Air Guard. The juror further responded that he believed that he could decide the case on the evidence and the law and that he believed that his *Page 10 
participation in the trial would not affect his working relationship with Jim. (Volume One of the Transcript of Proceedings at page 292-293). Satisfied with the juror's responses, the court then recessed for the evening.
 {¶ 43} The following day, the State moved the trial court to dismiss juror Brown. In support the state presented the following information:
 {¶ 44} "State: * * * Sergeant McBride spoke to Colonel Stevens from out at the Air Guard; and as a consequence of that conversation and the conversation with you, Your Honor, I have personally spoken with Colonel Stevens. Colonel Stevens advises that both Mr. Brown and James Miley are full-time civilian technicians. As a consequence to that, there is a small number, as the court is familiar with, of those people actually stationed at our post here in our unit.
 {¶ 45} "* * * Also, as a consequence of that, Colonel Stevens says, he compared it to DNA where it would be statistically impossible for them not to know each other, not to be familiar with one another, specifically because they have been deployed overseas together and because they are full-time technicians. They both work on airplanes. They do that as a unit. And Colonel Stevens can indicate that both Mr. Miley and Mr. Brown have worked on his plane from time to time. So he finds it extremely strange that Mr. Brown could not identify the fact that James Miley was somebody he knew when we were doing the questioning of him."
 {¶ 46} The Court then stated as follows:
 {¶ 47} "Court: * * * I would note that though it was not in my court, the trial of Milton Miley, in fact, I think there were a couple of different cases with Milton Miley, weren't there, over the years? They have been prominent in the news, both in Judge Henson's *Page 11 
court, I know. But it would be highly unlikely if Mr. Brown were in contact with Mr. Miley, he would not know of the connection between James Miley and Milton Miley and not know of those things going on, especially as they are deployed together and spend a lot of time talking about their family situations. So I am troubled, Mr. Hunter, that Mr. Brown has not been forthcoming with us and I am inclined to remove him as a juror. * * *"
 {¶ 48} "Court: * * * I have to make my call. My judgment call is he should be removed as a juror. So I think probably I am just going to let him be dismissed at this time." (Volume Two, transcript of Proceedings at pages 302-303).
 {¶ 49} The record reflects that the trial court's determination to excuse juror Brown was based upon a concern that the relationship between the two co-workers would impair the juror's ability to be fair and impartial to both the state and the defense. Thus, because the state is no less entitled to an unbiased determination than appellant, the trial court was within its sound discretion to excuse a juror when the juror's impartiality toward any party to the action becomes a concern. See State v. Pruitt, Trumbull County App. No. 2001-T-0101, 2003-Ohio-1882. Furthermore, the appellant has failed to demonstrate how the dismissal of juror Brown prejudiced the defense.
 {¶ 50} For these reasons, we find that the trial court did not abuse its discretion in excusing juror Brown. *Page 12 
 {¶ 51} Accordingly, appellant's second assignment of error is hereby overruled.
 {¶ 52} The judgment of the Richland County Court of Common Pleas is hereby affirmed.
 Edwards, J., Farmer, P.J., and Delaney, J. concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1