[Cite as *State v. Emerick*, 2020-Ohio-3510.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 19-CA-91 |
| | : | |
| DANIEL EMERICK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. 19CR410

JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      June 29, 2020

APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

WILLIAM C. HAYES                       JAMES A. ANZELMO
LICKING CO. PROSECUTOR                 ANZELMO LAW
PAULA M. SAWYERS                       446 Howland Drive
20 S. Second St., Fourth Floor         Gahanna, OH 43230
Newark, OH 43055

*Delaney, J.*

{¶1} Appellant Daniel Emerick appeals from the August 14, 2019 Judgment Entry of the Licking County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on May 28, 2019, at Coughlin Toyota in Heath, Ohio. A technician alerted the service manager to a broken rear window in a Toyota Tundra parked in the rear of the lot. The service manager reported the damage to the general manager, who pulled surveillance videos to determine how and when the window was broken.

{¶3} The general manager scanned video surveillance for the Toyota Tundra, first finding the window intact and looking for the moment when the window appeared broken. On the video he observed a man standing in the bed of the truck during late-night hours when the dealership was closed. The general manager wanted to know when and how the intruder entered the dealership so he continued to review surveillance footage. He observed the man park a "multicolored" truck at the north side of the lot. The man then entered a vehicle parked on Coughlin's lot, took items out of it, went to another vehicle, and did the same thing. The intruder then placed the items into his own vehicle.

{¶4} The intruder next moved his own truck to the east side of the property. He climbed inside the bed of the Toyota Tundra, remained in it for a period of time, and then climbed out. He proceeded to a scrap dumpster on the property and removed numerous rotors and scrap material, which he placed in his own vehicle. He then left the property.

{¶5} Appellee played clips of the Coughlin surveillance video at trial, narrated by the general manager. The manager acknowledged he put the clips together at the

request of police, cut down from the much longer original video. For example, the man was inside one of the vehicles for about 15 minutes rummaging through it, removing items, but the clip of these activities shown at trial was less than a minute long.

{¶6} The general manager testified the intruder entered two vehicles parked at the dealership for service: a maroon car and a Toyota Corolla. Regarding the maroon car, the dealership and the vehicle owner were not able to determine whether anything had been stolen. In the case of the Corolla, however, the intruder had spent about 15 minutes inside the car. The car's interior was left "a mess" and in evident disarray. Most notably, the car radio was missing and wires were hanging out of the dashboard where the radio should have been. The manager testified that the car had only been at the dealership a short time before the theft; the car's owner had attempted to drive through flood waters, damaging the motor and rendering the car inoperable. The car had been towed to its spot on the Coughlin lot, awaiting service. The general manager stated the radio was not missing when the car was brought in, and a missing radio would have been noted.

{¶7} Appellee's Exhibit 3 is a service quote created by the Coughlin service manager and parts manager. The vehicle was a 2005 Toyota Corolla. They entered the VIN number into a database and retrieved the description of the factory audio unit (radio) for that model. The total estimate to replace the radio, including parts, labor, and tax, was $3184.30. The value of the radio alone was $2844.04.

{¶8} Meanwhile, on May 24, 2019, around 10:08 a.m., appellant arrived at Crispin Iron & Metal, a scrapyard, with a truck full of scrap to sell. Crispin recorded

appellant's driver's license and photographed appellant, his vehicle, and the scrap itself, for which he was paid $108.  The scrap sold by appellant contained numerous rotors.

{¶9}  Ptl. Hayden Walpole of the Heath Police Department took a theft report from Coughlin Toyota on May 24, 2019, after the dealership discovered the broken truck window, leading to discovery of the thefts on the surveillance video.

{¶10} Detective Wayne Moore of the Licking County Sheriff's Office was investigating a red, white, and blue GMC truck that was involved in a number of theft incidents throughout Licking County.  Moore received a text from his supervisor of a photo of the suspect truck during the break-in at Coughlin Toyota, along with a picture of the intruder.  Moore didn't recognize the man so he sought information as to his identity. Other officers identified the individual as appellant, and Moore confirmed the identification by matching appellant's photo in a law enforcement database with photos of appellant from the Coughlin Toyota surveillance.

{¶11} Another officer alerted Moore that appellant had been observed walking downtown, and Moore tracked appellant down for an interview.  Audio of the video was played at trial as appellee's Exhibit 2.  Moore asked about the red, white, and blue truck, which was not registered to appellant.  Appellant told Moore it was his cousin's vehicle. Moore asked when appellant last drove the truck, and Moore replied about a month ago. Moore then asked, "What if I have video evidence of you driving the truck within the past week?" and appellant admitted he possibly drove the truck more recently.

{¶12} Moore next asked appellant about his whereabouts on specific dates when appellant spontaneously interrupted and asked, "Are you talking about the dealership in Heath?"  Moore said yes.  Appellant readily admitted he took scrap metal from a bin at

the dealership to sell for money to cover his rent. He admitted selling the rotors at Crispin's scrap yard. Moore asked appellant whether he also entered any vehicles at the dealership, and appellant denied doing so. Moore's supervisor then sent him additional clips of the Coughlin surveillance video showing appellant entering vehicles and taking items. When confronted with the video, appellant now admitted he had entered "maybe one or two" unlocked vehicles. He denied smashing any windows.

{¶13} Appellant testified on his own behalf at trial, opening with the statement that this was certainly not his first criminal offense but it was his first trial. Appellant told the jury he usually admits his wrongdoing and pleads guilty; in this case, he admitted stealing the scrap from the dumpster but denied stealing the radio from the Corolla. Appellant acknowledged a considerable criminal history of theft offenses. Appellant admitted he did steal items of property from Coughlin Toyota, "but they weren't worth more than $1000." T. 171.

{¶14} Appellant admitted entering the Coughlin lot and entering cars through unlocked doors. He first claimed he stole antifreeze, motor oil, spare change, and a flashlight. He denied stealing a radio. When asked about his changing stories to Moore, including when he last drove his cousin's truck, appellant said he was "confused."

{¶15} Upon cross-examination, the prosecutor played the Coughlin surveillance video and appellant readily admitted it was him, including the person entering the Corolla. The prosecutor asked what was in his right hand upon exiting the car, and appellant responded it was a bag. (The Coughlin managers had testified that the item in appellant's hand appeared to be a radio.)

{¶16} Upon redirect, defense trial counsel again asked appellant what was in his right hand. This time he claimed it was a bag, a phone charger, and a flashlight.

{¶17} Appellant was charged by indictment with one count of theft in an amount greater than $1,000 but less than $7,500 pursuant to R.C. 2913.02(A)(1), a felony of the fifth degree. Appellant entered a plea of not guilty and the matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) upon the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. The trial court asked defense trial counsel whether appellant requested an instruction upon the "lesser-included offense" of misdemeanor theft. Upon discussion, the parties and the trial court concluded a lesser-included instruction was not necessary and no such instruction was provided.

{¶18} Appellant was found guilty as charged and the jury made the special finding that the value of the theft was in an amount greater than $1000 but less than $7500. The trial court sentenced appellant to a prison term of one year.

{¶19} Appellant now appeals from the judgment entries of conviction and sentence.

{¶20} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶21} "I. EMERICK'S TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO ALLOW THE JURY TO CONSIDER THE THEFT OFFENSE AS A MISDEMEANOR OR FELONY, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶22} "II. EMERICK'S CONVICTION FOR THEFT, AS A FIFTH DEGREE FELONY, IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶23} "III. EMERICK'S CONVICTION FOR THEFT, AS A FIFTH DEGREE FELONY, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

**ANALYSIS**

I.

{¶24} In his first assignment of error, appellant argues defense trial counsel was ineffective in declining a jury instruction for misdemeanor theft. We disagree.

{¶25} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See, Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense

attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶26} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

{¶27} In the instant case, appellant was charged with theft as a felony of the fifth degree based upon aggregation of the values of the stolen items, including $100 for the scrap metal and $2800 for the radio, an amount greater than $1000 but less than $7500. R.C. 2913.02(B)(2).

{¶28} Appellant argues that appellee could not aggregate the value of the property in this case because the offense is not one of those described in R.C. 2913.61(C). Subsection (C) refers to valuation for a *series* of theft offenses and describes when a series of thefts in certain types of cases may be prosecuted as a single offense. We do not find that section applicable in the instant case because this case does not present a series of theft offenses. We note R.C. 2913.61(B) states:

> *If more than one item of property or services is involved in a*
>
> *theft offense* or in a violation of division (A)(1) of section 1716.14 of
>
> the Revised Code involving a victim who is an elderly person or
>
> disabled adult, the value of the property or services involved for the
>
> purpose of determining the value as required by division (A) of this

section is the aggregate value of all property or services involved in

the offense. (Emphasis added).

{¶29} In the instant case, more than one item of property is involved in a single theft offense from Coughlin Toyota, i.e. numerous rotors and a car radio.

{¶30} Appellant points to two cases in support of his argument that the property value in this case could not be aggregated. Each of those cases, however, involves a series of theft offenses and therefore implicates R.C. 2913.61(C). *State v. Gibson* is distinguishable from the instant case because it involves a series of thefts from an elderly person, a category specifically addressed by R.C. 2913.61(C). 2nd Dist. Champaign No. 2013-CA-11, 2014-Ohio-136, ¶ 14. Likewise, in *State v. Phillips*, a juvenile defendant committed a series of theft offenses from victims throughout Clinton County and surrounding counties; the items stolen totaled over $300,000 when aggregated. 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711. The state filed a single count of theft as a felony of the third degree pursuant to R.C. 2913.02(A)(1) based upon the aggregated value. The appellate court found that "[w]hile a series of offenses may be tried as a single offense, and the values of those offenses aggregated, R.C. 2913.61(C) is unambiguous in defining the circumstances under which this may occur," and the series of theft offenses here did not fit those categories. *State v. Phillips*, 12th Dist. Clinton No. CA2009-03-001, 2010-Ohio-2711, ¶ 69. Again, *Phillips* is distinguishable from the instant case and directly implicates R.C. 2913.61(C) because the defendant committed a *series* of theft offenses.

{¶31} Appellant's claim that defense trial counsel was ineffective in declining the trial court's offer of an instruction upon misdemeanor theft relies upon his premise that

the values of the items stolen were improperly aggregated.  Because we find the value of the stolen items was not aggregated improperly, appellant has not demonstrated ineffective assistance of defense trial counsel.

{¶32} Appellant's first assignment of error is overruled.

II., III.

{¶33} Appellant's second and third assignments of error are related and will be considered together.  Appellant argues his theft conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.  We disagree.

{¶34} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶35} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶36} Appellant was convicted of one count of theft pursuant to R.C. 2913.02(A)(1), which states: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent."  He argues his conviction of theft as a felony of the fifth degree must be reversed because appellee failed to prove he stole a radio valued at $2800.

{¶37} Appellant first points to his self-serving testimony that he denied stealing the radio.  We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus.  Appellant's shifting stories were readily apparent in his recorded statement to Moore and in his trial testimony.  Appellant further argues that the Coughlin employees could not verify the Corolla had a radio when it arrived for service. We note, however, that the general manager testified no one noted a missing radio when the vehicle arrived for service; the service manager testified that wires were hanging out of the dashboard after appellant was in it; both managers thought it was apparent from the video that appellant had the radio in his hand; and the jury was free to view the video for themselves and view the object in his right hand.  While the object may be somewhat difficult to identify on the video, we note appellant first testified that the object was a bag,

then claimed it was a bag, a phone charger, and a flashlight. Appellant implies the investigation of the theft was defective or incomplete, but as Moore testified, appellant admitted to the theft and was clearly caught on video committing the offense.

{¶38} Finally, appellant argues there is no evidence that the radio was worth $2800. The value of any real or personal property is the fair market value of the property or services, defined as "the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act." R.C. 2913.61(D)(3). In the instant case, the service manager and parts manager of the Toyota dealership created a service quote for replacement of the radio premised upon the car's VIN number. It is difficult to discern, and appellant does not explain, how a better estimate of fair market value could be arrived at. See, *State v. Sikola*, 5th Dist. Richland No. 06CA72, 2008-Ohio-843, ¶ 34 [expert in field of camera exchange and repair testified replacement value of merchandise would have been over five hundred dollars].

{¶39} We find the trial court did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's convictions be reversed and a new trial ordered. Appellant's convictions upon these offenses are not against the manifest weight of the evidence.

{¶40} The jury as the trier of fact was free to accept or reject and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistences and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or

sufficiency of the evidence." *State v. Johnson*, 2015-Ohio-3113, 41 N.E.3d 104, ¶ 61 (5th Dist.), citing *State v. Nivens,* 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996).  The jury need not believe all of a witness's testimony, but may accept only portions of it as true.  *Id.*

{¶41} Any inconsistencies in the evidence were for the trial court to resolve. *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, ¶ 49. "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Delevie*, 5th Dist. Licking No. 18-CA-111, 2019-Ohio-3563, ¶ 30, appeal not allowed*,* 158 Ohio St.3d 1410, 2020-Ohio-518, 139 N.E.3d 927, citing *State v. Brindley,* 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. In the instant case, appellee's evidence was compelling and uncontroverted, and the jury was free to weigh appellant's self-serving testimony accordingly.

{¶42} We find appellant's convictions are not against the manifest weight or sufficiency of the evidence.  His second and third assignments of error are overruled.

**CONCLUSION**

{¶43} Appellant's three assignments of error are overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Wise, John, J., concur.